UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
KERT MATTHEW, *pro se*,                             :
                                                    :
                        Plaintiff,                  :
                                                    :           **MEMORANDUM AND ORDER**
            -against-                               :           12-cv-53 (DLI) (VMS)
                                                    :
B. BARINE, INC.,                                    :
                                                    :
                        Defendant.                  :
                                                    :
------------------------------------------------------------ x
**DORA L. IRIZARRY, U.S. District Judge:**

On January 3, 2012, *pro se* plaintiff Kert Matthew ("Plaintiff") filed the instant action

against defendant B. Barine, Inc. ("Defendant"), asserting that Defendant, Plaintiff's former

employer, discriminated against him, in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e, *et seq.* Defendant moved to dismiss the action pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff opposed the

motion. For the reasons set forth below, Defendant's motion is granted. However, the complaint

is dismissed without prejudice and Plaintiff is granted leave to file an amended complaint by

April 1, 2013.

## BACKGROUND

Defendant is a mannequin manufacturing company located in Brooklyn, New York. (*See*

Compl., Dkt. Entry 1, at 9.) Plaintiff was employed by Defendant from June 1, 1995 through

February 1, 2011. (*Id.* at 6.) Plaintiff alleges that, when he began working for Defendant,

Plaintiff held the position of mannequin finisher. (*Id.* at 6.) After a year, Plaintiff was promoted

to shipping and receiving supervisor, which required that Plaintiff supervise employees working

1

under him, ensure that the mannequins were prepared for delivery, receive shipments from other companies and manage aspects of the shipping and receiving department. (*Id.*)

Plaintiff contends that the alleged discrimination and harassment began when Defendant hired Daniel Montero in February 2008. (*Id.*) Plaintiff alleges that Montero harassed and discriminated against Plaintiff "on a daily basis." (*Id.*) The first alleged incident detailed in the materials Plaintiff attached to the complaint occurred on July 21, 2010, when Montero approached Plaintiff "in a rather aggressive fashion" and told Plaintiff he could not work overtime. (*Id.* at 17.) Plaintiff submitted a letter to a supervisor complaining about the incident and stating that he was "concerned that there might be a more underlying [sic] issue to the hostility," but said that he understood if Defendant did not want him to work overtime for financial reasons. (*Id.*) Plaintiff also requested that he receive a performance evaluation from Defendant so both "management and I are both aware of my current responsibilities" and "we may proceed with a performance improvement plan if need be." (*Id.*)

On October 21, 2010, Plaintiff was demoted from his supervisory position to the position of mannequin wrapper. (*Id.* at 8, 14, 23.) Plaintiff alleges that, while he was working that day, Defendant's president, Pat Marino, came out of nowhere and "started yelling at me: you making [sic] to [sic] much mistakes you are demoted." (*Id.* at 23.) Plaintiff also attaches to the complaint an e-mail from Marino telling Plaintiff that his demotion "was due to your own poor work performance and the mistakes you have been making and you have been spoken to about them on several occasions." (*Id.* at 14.)

On October 25, 2010, Plaintiff allegedly pulled a muscle in his back while working. (*Id.* at 23.) Plaintiff contends that when he told Montero about his back pain, Montero responded: "Man punch your card and get out of here when [sic] the doctor give you a letter bring it with

you when you coming [sic] back to work." (*Id*. at 24.) Plaintiff notes that Montero proceeded to drive Plaintiff to the hospital and told Plaintiff that he was "just trying to protect the company" when he spoke to Plaintiff in a hostile manner. (*Id.*)

On November 15, 2010, Plaintiff sent a letter to Marino asserting that he was "repeatedly harassed" by Montero that day. (*See id.* at 11, 16.) Specifically, Plaintiff contended that Montero yelled at Plaintiff because he answered an "important" telephone call from his daughter's teacher during work hours. (*Id*. at 16*.*) Plaintiff also stated that Montero yelled at him again the same day for talking on his cellular phone during his break, even though telephone use allegedly is permitted during breaks. (*Id.*) In the letter to Marino, Plaintiff also accused Montero of being a bad manager and said that he felt "harassed" by Montero. (*Id*.) Marino responded by e-mail, disputing Plaintiff's version of events and reminding Plaintiff that employees may not make personal telephone calls during work time. (*Id.* at 11.) Plaintiff responded to Marino's e-mail by complaining about Montero's "harassing and aggressive" behavior. (*Id*.)

On January 31, 2011, Montero allegedly accused Plaintiff of not doing his job and told him to leave for the day. (*See id.* at 10, 20.) The following day, Marino told Plaintiff he was suspended because he was not getting along with Montero. (*Id.* at 10.) Plaintiff was fired shortly thereafter. (*Id.* at 6*.*)

Plaintiff filed administrative claims with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"), asserting that Defendant discriminated against him on the basis of national origin and race/color. (*See id.* at 4.) Both agencies found no probable cause and, after receiving a right to sue letter from the EEOC, Plaintiff timely filed the instant Title VII action. (*See id*. at 4-5.)

Defendant moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff does not allege any facts indicating that any adverse employment action occurred as a result of his membership in a protected class. (*See generally* Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., Dkt. Entry 11.) Plaintiff opposed the motion, asserting that the e-mail exchanges between Plaintiff and Marino attached to the complaint, as well as the other descriptions of discrimination in his complaint, support his claims. (*See* Pl.'s Aff., Dkt. Entry 14.) In his opposition affidavit, Plaintiff also adds allegations that Montero constantly followed Plaintiff into the bathroom and that Defendant offered him money in exchange for not bringing a lawsuit as a result of the back injury Defendant sustained while working. (*Id.* ¶ 2(c), (h).) Plaintiff also asserts that he was an undocumented worker from 1993 until he received a work permit and green card in 2010. (*Id.* ¶ 2(f).) Plaintiff suggests that he may have been fired because he obtained legal status in the United States and because Defendant hired an undocumented worker to take his former position. (*Id.* ¶ 2(f)-(g).)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nevertheless, on a Rule 12(b)(6)

motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F. 3d 768, 776 (2d Cir. 2002).

In the context of an employment discrimination claim, a complaint "need not contain specific facts establishing a *prima facie* case of discrimination" to survive a motion to dismiss. *Gillman v. Inner City Broad. Corp.*, 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009). However, "a complaint must include . . . a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)) (alterations in original). This remains the proper pleading standard in the Second Circuit, operating in conjunction with the rule articulated in *Twombly* and *Iqbal* that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Gillman*, 2009 WL 3003244 at *3.

In reviewing the complaint, the court is mindful that, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The court construes *pro se* pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis omitted). A district court must nevertheless dismiss an *in forma pauperis* action at any time when it fails to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## DISCUSSION

Title VII provides that "[i]t shall be an unlawful employment practice for an employer. . . to discharge any individual, or otherwise to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a plaintiff must "either . . . show[] that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or . . . demonstrat[e] that harassment on one or more of these bases amounted to a hostile work environment." *Feingold v. New York*, 366 F. 3d 138, 149 (2d Cir. 2004). "It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Patane v. Clark*, 508 F. 3d 106, 112 (2d Cir. 2007) (per curiam) (quoting *Brown v. Henderson*, 257 F. 3d 246, 252 (2d Cir. 2001)) (first alteration in original).

Plaintiff has failed to state a claim here because he does not allege that he was demoted, fired or otherwise subjected to a hostile work environment because of his membership in a protected class. In the form complaint Plaintiff submitted in this action, paragraph seven provides, "Defendant(s) discriminated against me based on my," followed by empty check boxes next to race, color, gender/sex, religion, national origin and age. (*See* Compl. at 3.) In this paragraph, Defendant states that he is a Black, West Indian, Methodist, 39 year-old male, but does not check off any of the boxes indicating which of these characteristics, if any, caused Defendant to allegedly harass, demote and fire Plaintiff. (*See id.*)

The materials attached to the form complaint also do not provide any indication that any adverse action taken by Defendant against Plaintiff was because of Plaintiff's membership in a protected class. Instead, the materials appear to reflect a personal conflict between Plaintiff and Montero. It is clear that Plaintiff felt that Montero was a bad manager and generally an unpleasant person because he aggressively confronted Plaintiff over, among other things,

Plaintiff's job performance and personal telephone calls on company time. Plaintiff vigorously disputes that Montero's accusations were justified, but Plaintiff never alleges that Montero's allegedly unwarranted rebukes were caused by animus against Plaintiff's race, nationality or other relevant characteristic. Without any such allegation, Plaintiff has not stated a claim for relief.

In an affidavit Plaintiff submits in opposition to Defendant's motion to dismiss, Plaintiff suggests for the first time that he was demoted and fired because he obtained authorization to work in the United States in 2010, and Defendant prefers to hire undocumented immigrant workers. (*See* Pl.'s Aff. ¶ 2(f)-(g).) While, in light of Plaintiff's *pro se* status, the court can consider this new allegation as effectively amending the complaint, it fails to defeat Defendant's motion to dismiss. *See Gadson v. Goord*, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (Sotomayor, J.) ("Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."). Animus based upon a person's work authorization status is not covered by Title VII. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) ("[N]othing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage.") The differentiation between documented and undocumented workers arises out of their legal rights to live and work in the United States, not out of their specific national origin, race or any other characteristic covered by Title VII. Plaintiff does not allege, for example, that Defendant treated West Indian immigrants differently than White Canadian immigrants; rather, he alleges that Defendant discriminated against immigrants once they obtained work authorization. *See id.* ("Certainly it would be unlawful for an employer to discriminate against aliens because of race,

color, religion, sex, or national origin-for example, by hiring aliens of Anglo-Saxon background but refusing to hire those of Mexican or Spanish ancestry.") Hiring undocumented workers and firing employees once they obtain their green cards may violate other laws, but, at least in this instance, it does not provide a basis for a Title VII claim.

The court notes that employment discrimination based upon citizenship status is prohibited by 8 U.S.C. § 1324b. However, before bringing a private claim under this statute, a plaintiff first must file a complaint with an appointed "Special Counsel" within the United States Department of Justice and, if the Special Counsel declines to bring a claim, the plaintiff can bring a private action only before an administrative law judge. *See* 8 U.S.C. § 1324b(d)(2) ("If the Special Counsel, after receiving such a charge respecting an unfair immigration-related employment practice . . . has not filed a complaint before an administrative law judge with respect to such charge within such 120-day period, the Special Counsel shall notify the person making the charge of the determination not to file such a complaint . . . and the person making the charge may . . . file a complaint directly before such a judge within 90 days after the date of receipt of the notice."); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 648 (S.D.N.Y. 2000) ("Section 1324b has an extensive administrative enforcement mechanism, detailed in the statute and related administrative regulations, which requires exhaustion of administrative remedies before filing a claim in federal court."). Thus, even reading *pro se* Plaintiff's submissions liberally as an attempt to raise a claim pursuant to 8 U.S.C. § 1324b, and assuming *arguendo* that Defendant's alleged conduct falls under the statute, such a claim is not viable before this court.

The court further notes that the New York City Human Rights Law prohibits discrimination based upon citizenship or immigration status. *See* N.Y.C. Admin. Code § 8-107(1) ("It shall be an unlawful discriminatory practice: (a) For an employer . . ., because of the

actual or perceived . . . alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."); *see also id.* § 8-102(21) (Defining the term "alienage or citizenship status" to mean, "(a) the citizenship of any person, or (b) the immigration status of any person who is not a citizen or national of the United States."). To the extent that Plaintiff's submission could be construed to state a claim under local law, the court declines to exercise supplemental jurisdiction over such a claim in light of Plaintiff's failure to state a claim under federal law, and any state or local law claim is dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F. 3d 299, 304-06 (2d Cir. 2003).

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000). Based upon a liberal reading of the complaint and the other materials Plaintiff submitted, the court cannot determine whether Plaintiff is substantively unable to state a valid claim or his claim is valid but pled inadequately. As a result, the court dismisses the complaint without prejudice in order to provide Plaintiff the opportunity to plead facts, if any, showing that Defendant's alleged adverse treatment of Plaintiff was motivated by Plaintiff's membership in a protected class as defined by Title VII.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed without prejudice to file an amended complaint. Plaintiff must file any amended complaint NO LATER THAN APRIL 1, 2013. Plaintiff must use the same docket number currently assigned to this case (12-cv-53) in

any amended complaint. For Plaintiff's convenience, "Instructions on How to Amend a Complaint" are attached. If Plaintiff decides to file an amended complaint, Plaintiff is directed to plead any facts he can assert in good faith that Defendant's alleged adverse treatment of Plaintiff was motivated by Plaintiff's race, color, religion, sex, or national origin. If Plaintiff fails to file an amended complaint by April 1, 2013, judgment will be entered dismissing the complaint with prejudice.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       February 28, 2013

                                    _____/s/_____
                                         DORA L. IRIZARRY
                                    United States District Judge